[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this action are respectively the "Seller" and "Purchaser" of real estate pursuant to a contract (Plaintiff's Exhibit 1). The agreement concerned a lot located on West Main Street in the downtown area of Waterbury, Connecticut. The parties agreed to the sale for a price of $700,000 in their contract of July 28, 1989. The price was to be accomplished by a $10,000 deposit which was paid by Defendant, $500,000 by purchase money mortgage to the seller-plaintiffs and the balance by cash or its equivalent at the closing which was to have taken place on August 1, 1989.
The Defendant contends that it did not go through with the closing because of the plaintiffs-sellers' failure to remove abandoned cars from the premises in violation of an express provision of the contract of sale (Exhibits 1, Section 6.1(b)). The defendant's position is that the removal of all abandoned cars from the premises was a condition precedent to its obligation to perform its contractual obligations at the closing.
The evidence established that the subject property was an empty lot which was used as a parking lot by area residents or workers. The plaintiffs indicated that there were usually a few cars on the lot, and that, on occasion cars were dumped or abandoned on the lot. The plaintiffs proved that they ordered and accomplished the removal of an abandoned car from the premises in response to defendants' complaint on the date of closing. Plaintiffs believed there was only one such abandoned car on the premises on the date of closing, August 1, 1989.
The plaintiffs established that on the scheduled closing date of August 1, 1989, they were prepared to perform their obligations under the contract and in fact prepared and executed the deed of conveyance. They also demonstrated their willingness to perform by dispatching a tow truck to remove the abandoned car from the subject premises on the date of closing.
The defendant offered testimony that the removal of abandoned cars was "critical" to it, and argues that the alleged failure to remove abandoned cars was a material breach of the contract. CT Page 4859
In resolving issues of materiality of a contractual breach, our Supreme Court in Bernstein v. Nemeyer, 213 Conn. 665, 672
(1990) adopted the multi-factor standard for materiality contained in the Restatement (Second) Contracts Section 241 (1981).
 "Section 241 of the Restatement (Second) of Contracts provides: In determining whether a failure to render or to offer performance is material, the following circumstances are significant.:
 (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
 (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
 (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiturer;
 (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
 (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."
Applying the standards even under the scenario which the defendant claimed to exist, (the location of a few abandoned cars on the 26,000 square foot premises) leaves the court to conclude that any failure to remove an abandoned car or cars was not a material breach which would excuse the defendant's failure to perform obligations to close the sale.
The defendant desired to secure the premises for a parking lot. The removal of any remaining abandoned cars through towing services would have afforded the defendant the benefit he reasonably expected. Evidence at trial indicated that the cost of removal of an abandoned car ranged from $75 to $200. CT Page 4860
The defendant could have been compensated for any expense it incurred in removing abandoned cars. The cost involved in removing a few cars compared to the purchase price of $700,000; is analogous to the "punch list" items for which escrows are established in the typical real estate closing.
The evidence established that the fair market value of the property on August 1, 1989 was less than the contract price, and the sellers would then forfeit a significant value which they had bargained for.
The plaintiff-sellers demonstrated their willingness to cure by hiring a towing company to remove an abandoned car on the day of closing, August 1, 1989; and uncontroverted evidence of their willingness to remove any other abandoned cars on the premises.
The plaintiffs proved at trial that they had fully prepared to close on the scheduled closing date and were prepared to remove any abandoned vehicles which were on the premises. The defendant offered no reasonable explanation for their failure to allow the plaintiffs to cure any alleged failure to remove abandoned vehicles. The closing was scheduled to be held in Waterbury where the property was located. The defendant's good faith was not established to the satisfaction of the court.
The court finds factually that the property had at most one or two cars which could have been considered abandoned on the date of closing. This did not constitute a material breach of the contract by the plaintiff-sellers.
The court finds that the defendant "Purchaser" breached the agreement. (Exhibit 1) by failing to close the sale.
The plaintiffs should be placed in the same position they would have been if the defendant had performed. The measure of damages for breach of a contract of sale of real estate is the difference between the contract price and the value of the property at the time of the breach of the contract. Lodo v. H. K. Sargeant Associates, Inc., 188 Conn. 69, 82, 448 A.2d 812
(1982); Rowan Construction Company v. Hassane, 17 Conn. App. 71, 80
(1988).
There was conflicting evidence at trial of the fair market value of the premises on the date of August 1, 1989; which represents the date of the defendant's breach. Exhibit "1" shows a value of $700,000. One of the plaintiffs valued it at $450,000 to $700,000. The plaintiffs purchased a portion of the premises with a building which they tore down for $400,000 in 1988. A real estate appraiser valued it at $363,000. Two real estate agents offered values from $300,000 to more than $500,000. CT Page 4861
The court finds that the value of the property at the date of the breach was $600,000. This determination is highly influenced by the plaintiffs' purchase price in 1988 for a portion of the subject premises, and the negotiated price between the parties.
If the closing had gone forward, the plaintiffs would have been obligated to pay a real estate commission and sales taxes and conveyance. The court finds that these costs would total $57,000.
Thus, the damages for loss of the plaintiff's bargain is $43,000. In addition, pursuant to their contract, the plaintiffs are entitled to their attorneys fees. The court finds that such fees and costs are in the reasonable amount of $20,000. Defendant is entitled to credit in the amount of its $10,000 deposit, and the cost of the removal of one vehicle from the premises, $150.
Judgment enters for the plaintiffs against the defendant in the total amount of $52,850.
McWEENY, J.